Prissy
**WILLIAMS–GODFREY, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS,**
Respondent.

No. 89–170.

District of Columbia Court of Appeals.

Argued Jan. 9, 1990.
Decided Feb. 16, 1990.

---

Mark David Schneider, Washington, D.C., for petitioner.

William H. Lewis, Washington, D.C., for respondent.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

## ORDER

Petitioner seeks reversal of the decision of the Board of Elections and Ethics (Board) denying her the seat as a representative to the District of Columbia Advisory Neighborhood Commission (ANC) 2C02 that she won in the November 8, 1988, general election. She contends that the Board misconstrued the District of Columbia's voter residency requirement, D.C. Code § 1–1302(16)(A) (1987 Repl.),[1] when it held that she did not have a "fixed" habitation in the ANC district in which she was elected. She also claims that if the Board's interpretation of the voter residency requirement is correct, then it violates her rights under the First and Fifth Amendments to the United States Constitution. Because the Board's interpretation of D.C. Code § 1–1302(16) can be read broadly to disenfranchise District of Columbia residents who nomadically move about the District, we remand to the Board of Elections and Ethics in order to afford it the opportunity to clarify its rationale.

## I.

On November 8, 1988, petitioner received the highest number of votes as a write-in candidate for ANC 2C02. Her candidacy was challenged on November 29, 1988, by Robert Ebel who received the second highest number of votes on the ground that she did not satisfy the residency requirement. Following an evidentiary hearing, the Board granted the challenge, concluding as a matter of law that because petitioner's "residence moves or coincides with wherever she happens to be working and/or sleeping," she failed to satisfy the residency requirement of § 1–1302(16).

## II.

◼ The significance of the Board's ruling obligates it to state with clarity the reasoning behind its decision. The Board has taken extraordinary action in depriving petitioner of her electoral victory and the voters of ANC 2C02 of their chosen representative on the grounds of petitioner's nomadic residence. In so doing the Board relied on the residency provisions for qualified electors. *See* D.C.Code § 1–1302(2) (qualified elector defined).

The Board's decision can be viewed as limited to ANC single member district elections and to the particular aspects of participatory democracy underlying the creation of ANCs as requiring more than a nomadic existence to assure integrity and accountability in an electoral system.[2] The Board also may intend to rely on a distribution between the right to vote in ANC elections and the right to be elected as the single member ANC representative. But the Board has not stated this as its rationale. Although counsel for the Board relied on these distinctions to some extent in its brief on appeal, it is the rationale of the Board that we must review, not the " 'post hoc' rationalizations" of its counsel. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

---

1. D.C.Code § 1–1302(16)(A) (1987 Repl.) provides:

   (A) The term "residence", for purposes of voting, means the principal or primary home or place of abode of a person. Principal or primary home or place of abode is that home or place in which the person's habitation is fixed and to which a person, whenever he or she is absent, has the present intention of returning after a departure or absence there-

   from, regardless of the duration of the absence.

2. *Cf. Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974) (substantial regulation of elections required if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes).

■ Consequently, the Board's decision can be read as stating that under no circumstances can nomadic residence meet the statutory residency requirement. So read, the Board's decision implicates the right to vote itself,[3] and not merely the right to hold elective office or to be a candidate.[4]

Under either reading of the Board's decision, however, the Board has expressed concerns about the integrity of the electoral process without articulating how those concerns are implicated here and how petitioner's lifestyle undermines or is inconsistent with the statutory residency requirement of a fixed location.[5] It also is unclear how the Board viewed the burden of proof, as distinct from the burden of coming forward with evidence, and whether petitioner was advised of the nature of her burden. Nor is it clear how the Board viewed evidence of residency after November 8, 1988, as bearing on the November 8 election.

Accordingly, we remand the case to the Board to afford it the opportunity, which we believe it deserves in view of the ramifications of its decision and the important trust with which it is vested in administering the District of Columbia election laws, to articulate with precision the rationale of its decision.

*So ordered.*

---

3. The Supreme Court has held that the right to vote is a fundamental right. *See, e.g., Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). State laws which restrict the franchise, such as durational residency or pre-election registration requirements, are subject to strict scrutiny. *See Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972).

4. "Though any individual's personal right to candidacy is not itself a fundamental right, *see Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), a critical ingredient of the electorate's ability to vote effectively is choice among the candidates with demonstrated sup-

port." *Consumer Party v. Davis,* 606 F.Supp. 1008, 1014 n. 7 (E.D.Pa.1985), *vacated,* 778 F.2d 140, *on remand,* 633 F.Supp. 877 (E.D.Pa.1986). *See also Speer v. City of Oregon,* 847 F.2d 310, 312 (6th Cir.1988) (right to vote generally compels much stricter scrutiny as a fundamental right than does the right to offer one's self as a candidate for public office).

5. *See In re Applications for Voter Registration of Willie R. Jenkins, et al.* BOEE Exhibit # 14; *see also Pitts v. Black,* 608 F.Supp. 696, 709 (S.D.N.Y.1984) (finding that the homeless have a constitutional right to vote, and that state's interest in preventing voter fraud is insufficient to overcome this right).